The following was this Court’s opinion, pronounced by
JUDGE ROANE.
As the land in the case before us was derived to the infant from his father, and as it is admitted that he died leaving one or more brothers or sisters of the half blood on the part of the mother, the Court is of opinion that the case comes strictly within the 5th section of the act of descents, Rev. Code of 1794, p. 168. This case then is withdrawn from the general operation of the Act, not only for the purpose of excluding the half brothers and sisters, but also for that of shewing who is to take. In this case, the brother of the father (the appellant,) is to take in exclusion of the paternal Grandmother (the appellee) who is wholly omitted to be mentioned in the section. It was entirely as competent to the legislature to cut her out in this case, by omitting to mention her, as to exclude the half blood. In the case of Templeman v. Steptoe, all the judges are to be considered as deciding *against the Grandmother; the majority, by sustaining the claim of the Uncle, on the ground that he was named in the section, which she is not; and the dissenting Judge, by deciding against the stronger pretensions of the Uncle; because he supposed the implication was too weak to bear out even his claim. He therefore more than decided against the Grandmother, by negativing the pretensions of the Uncle.
On the ground therefore of this unanimous opinion of the Court against the grand mother, as well as of our own construction of the Act, we are of opinion to reverse the decree and dismiss the Bill.
DESCENT AND DISTRIBUTION.
I.Property Descendible.
II.Course of Succession.
A.Persons Entitled and Their Interests.
1. Infants’ Estates.
a. General Rule.
b. Property Real.
(1) When Uncle Inherits.
(2) what Descendible to Father, Living Brothers.
<3) Estate Derived from Father, Living Mother.
<4) when Father Takes.
(5) Moieties to Paternal and Maternal Kindred.
(6) when Mother Takes One Moiety.
(7) Who Entitled to Rents and Profits.
(8) How Proceeds of Sale Pass.
c. Personal Property.
d. Construction of “Brothers and Sisters.’’
2. Bastards.
a. Definition.
b. Presumption of Legitimacy.
c. When Marriage Legitim ates.
d. Legitimate by Force of Statute.
e. Power to Transmit.
3. Collaterals of the Half Blood.
4. Husband and Wife.
a. Widow’s Interest in Proceeds of Slaves.
b. Widow’s Deed Ineffectual to Relinquish Interest.
c. Effect of Widow's Agreement.
d. Interest of Husband in Right of Wife.
e. Husband Sole Heir of Wife.
5- Aliens.
6. Interests of Whole and Half Blood.
7. Interests Per Capita and Per Stirpes.
8. Interest Depending on Seisin of Ancestor.
III. Rights and Liabilities.
A. Of Heirs.
1. Right to Rents and Profits.
2. Entitled to Possession of Real Estate.
8. When Possession Presumed.
4. Entitled to Interest on Surplus.
5. When Account of Personalty Proper.
6. Rights Subordinate to Creditors.
7. When Not Liable for Rents and Profi ts.
8. When to Account to Coheirs.
9. Surplus Applied Ratably to Ancestor’s Debts.
10. Not Compellable to Make Conveyance.
11. Responsible on Bond, if Assets Descended.
12. Not Bound for Clerk’s Fees.
13. When Land Primarily Liable.
IV. Actions.
A. By Distributees.
B. By Creditors.
C. By Heirs.
1. When “Purchaser for Value” No Defense.
V.Construction of Statute of Descents.
VI.Application of Statutes.
A. To Descents.
B. To Debts.
Cross References to Monographic Notes.
Advancements, appended to Watkins v. Young, 31 Gratt. 84.
Conflict of Laws, appended to Lewis v. Fullerson, 1 Rand. 15.
Debts of Decedents, appended to Shores v. Wares, 1 Rob. 1.
Executors and Administrators, appended to, Rosser v. Depriest, 5 Gratt. 6.
Husband and Wife, appended to Cleland v. Watson, 10 Gratt. 159.
Judgments, appended to Smith v. Charlton, 7 Gratt. 425.
Marshalling Assets, appended to Carrington v. Didier, 8 Gratt. 260.
Trusts and Trustees, appended to Lee v. Randolph, 2 Hen. & M. 12.
Wills, appended to Hughes v. Hughes, 2 Munf. 209.
I. PROPERTY DESCENDIBLE.
Quasi Equity ol Redemption. — where a grantor in a deed of trust to secure debts, which conveys real and personal property, dies intestate, before sale of the trust subject, the quasi equity of redemption descends to the heirs. Harvey v. Steptoe, 17 Gratt. 291.
Escheated Lands. — And where one dies, leaving es *718 tate unclaimed, which escheats to the commonwealth, after-discovered heirs of the deceased may recover the value of the estate so escheated. Adie v. Com., 25 Gratt. 712.
Inchoate Interest. — So, also, an inchoate right to lands, held by entry and survey only, is real estate, and will descend to the heirs of the holder. Morrison v. Campbell, 2 Rand. 217.
Possible Resulting Trust. — A possible resulting trust to heirs at law is transmissible under the statute of descents and distributions. Carney v. Kain, 40 W. Va. 758, 23 S. E. Rep. 650.
Executory Devises. — And so are executory devises transmissible by descent. Medley v. Medley, 81 Va. 265.
11. COURSE OP SUCCESSION.
A. PERSONS ENTITLED AND THEIR INTERESTS.
1. Init ants’ Estates.
it, General Buie. — when an infant dies without issue, having title to estate, derived from a parent, such estate shall pass to his kindred on the side' of that parent, if any such living at the death of the infant.. If no such parent living, then it shall pass to his kindred on the side of the other parent. 2 Minor’s, Inst. 542; Browne v. Turberville, 2 Call 398, 404; Tomlinson v. Dillard, 3 Call 105; Dilliard v. Tomlinson, 1 Munf. 183; Templeman v. Steptoe, 1 Munf. 339; Addison V. Core, 2 Munf. 279; Liggon v. Fuqua, 6 Munf. 281. And see Vaughn v. Jones, 23 Gratt. 444; Bailey v. Teackle, Wythe 173.
6. Property Beal.
(r) When Uncle Inherits — In Liggon v. Fuqua, 6 Munf. 281, it is held that land inherited by an infant, direct from its father, on the death of the infant, leaving no relatives but ? grandmother and uncle In the parental line, goes wholly to the uncle.
(2) What Descendible to Father, Living Brothers. — A mother owning land dies intestate, leaving a husband and five children, two of whom died successively in infancy without issue, survived by their father and three brothers. On the question of succession, it was held that on the death of the first infant his share descended to his four brothers without regard to the father, and on the death of the second infant the share he derived by descent from his mother passed to his brothers, also, but the share he derived from his deceased brother descended to his father. Walkers v. Boaz, 2 Rob. 485. See Liggon v. Fuqua, 6 Munf. 281; Dickenson v. Holloway, 6 Munf. 422.
(3) Estate Derived from Father, Living ITother.— Where an infant, having title to real estate of inheritance, derived by purchase or descent immediately from the father, dies without issue, and with no brother or sister, or descendant of either, the father being dead, but the mother living, the right of inheritance is not in abeyance, but goes in parcenary to the brothers and sisters of the father, or their lineal descendants: and, nica versa, such estate being derived immediately from the mother, and she being dead, but the father living, it goes in parcenary to her brothers and sisters, or their lineal descendants. Templeman v. Steptoe, 1 Munf. 339, See Addison v. Core, 2 Munf. 279.
(4) When Father Takes. — Where one devises land to the children of his daughter, who marries and has five children, three of whom die without issue and unmarried after the death of testator, the interest of the deceased children in the land passed by statute to their father. Cosgray v. Core, 2 W. Va. 353.
(5) Moieties to Paternal and Maternal Kindred. — A son was possessed of a life estate in slaves, with a contingent limitation to his mother, and her heirs, upon his dying without issue living at his death. The mother died in his lifetime, leaving him her only heir, and he afterwards died witkoutissue. It was held that the son was sole distributee of his mother and succeeded to her estate as such, and, having died without mother, brother or sisters, or their descendants, the whole of-his personal estate was divisible into moieties, to go to the paternal and maternal kindred, according to the provisions of the act of descent. Royall v. Royall, 5 Munf. 85.
(6) When Mother Takes One Moiety. — Where, an infant inherits land from a great uncle in the paternal line, and dies, the mother of the infant will inherit one moiety. Owen v. Cogbill, 4 Hen. & M. 488.
(7) Who Entitled to Rents and Profits. — When an infant dies intestate, the profits of his estate, including the increase of slaves, accruing to such infant during his life, but not applied to his use, or otherwise lawfully disposed of, ought to go to the person inheriting such estate generally. Dilliard v. Tomlinson, 1 Munf. 183.
(8) How Proceeds of Sale Pass. — And in Vaughan v. Jones, 23 Gratt. 444, it is held that where an infant’s lands have been sold the proceeds pass as realty, she dying under the age of twenty-one years, and that the child of the deceased infant would inherit subject to the life estate of the husband of the infant, and upon the death of the child, under twenty-one years of age, such estate passed as real estate to the heirs of the child on the part of he mother.

e. Personal Property.

When Mother Not Entitled. — By the act of 1792 the personal estate is distributable among the persons entitled to the real; and, therefore, the mother of a. deceased infant is not entitled to any part of the infant’s personal estate derived from the father. Tomlinson v. Dillard, 3 Call 105. For the principle, see Templeman v. Steptoe, 1 Munf. 339; Addison v. Core, 2 Munf. 279; Dilliard v. Tomlinson, 1 Munf. 183; Vaughan v. Jones, 23 Gratt. 444. And see Bailey v. Teackle, Wythe 179.
d. Oonstruction of “Brothers and Sisters.’’ — If a statute provide, “if after the death of a father any of his children shall die intestate, without wife or children in the lifetime of the mother, every brother and sister, and the representatives of them, shall have an equal share with her,” and though all the children of one woman by divers men are brothers and sisters to one another, yet in the same statute the words “and if all the children shall die intestate, without wife or children in the lifetime of the mother, then the portion of the child so dying-shall be equally divided between the mother and the next of kindred by the father,” it was held that the clause “brother and sister” here meant “brothers and sisters by the same father.” Bailey v. Teackle, Wythe 179.
2. Bastards.
a. Definition. — Bastards are persons born out of wedlock, lawful or unlawful’;'or not within competent time after termination of coverture, or if bom out of wedlock, whose parents do not afterwards intermarry and the father acknowledge them, or, who are born in wedlock when procreation by the husband is impossible. Smith v. Perry, 80 Va. 563.
b. Presumption of Legitimacy. — But the law presumes legitimacy where the husband recognizes the child as his, and impossibility of procreation is not established, though the cohabitation had ceased, before the act of February 27, 1866, legalizing marriages of colored persons. Smith v. Perry, 80 Va. 563. See Scott v. Hillenberg, 85 Va. 245, 7 S. E. Rep. 377; Bowles v. Bingham, 2 Munf. 442.
c. Wien Marriage Legitimates — And, where a child is born a bastard, but the parents afterwards intermarry and the father recognize the child as his. *719 such a child is thereby legitimized. Sleigh v. Strider, 5 Call 439; Rice v. Efford, 3 Hen. & M. 225; Ash v. Way, 2 Gratt. 203; Coutts v. Greenhow, 2 Munf. 363; Bennett v. Toler, 15 Gratt. 588. But see Greenhow v. James, 80 Va. 636; Smith v. Perry, 80 Va. 563.
d. Legitimate by Force of Statute— In Heckert v. Hile, 90 Va. 390, 18 S. E. Rep. 841, where Stones v. Keeling, 5 Call 143, is cited, it is held, under § 2554 of the Code, declaring, “the issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate,” that “children by the second marriage of a man whose first wife had left him and gone to another state are legitimate, though born before the first marriage was dissolved.”
And in Stones v. Keeling, 5 Call 143, it is held that the issue of a woman by a second marriage, which took place during the lifetime of her first husband, are legitimate after the death of their father. See also, Heckert v. Hile, 90 Va. 390, 18 S. E. Rep. 841.
e. Power to Transmit. — In Garland v. Harrison, 8 Leigh 368, it was held that, under the statute of Virginia, directing the course of descents, bastards are capable of transmitting inheritance on the part of their mother, and when a bastard dies intestate, leaving no children or descendants, but leaving his mother surviving, and two bastard brothers, by other fathers, the estate will pass to the mother and the two bastard brothers, they taking half as much as the mother. See Davis v. Rowe, 6 Rand. 364.
3. Collaterals of the Hale Blood.
Taking Interest in Remainder. — in Bennett v. Toerl, 15 Gratt. 588, it was held that, upon a devise to a daughter for life, remainder to her children, an illegitimate child of the daughter would take, along with her legitimate children. See also, Hepburn v. Dundas, 13 Gratt. 219; Moore v. Conner, 2 Va. Dec. 56; Doe v. Andersons, 4 Leigh 118; Blunt v. Gee, 5 Call 481.
Brothers and Sisters, Former Slaves. — And where three children of the same mother, born slaves, one of whom, after emancipation, acquires real estate, an d dies intestate, and without children, the mother dead, the other two take the estate as heirs of their deceased sister. Hepburn v. Dundas, 13 Gratt. 219.
4. HusbaND And Wife.
a. Widow's Interest in Proceeds of Slaves— Certain slaves having been deported, and the owner dying without issue, leaving a widow, before receiving indemnity therefor, and such indemnity having been paid to the administrator of the deceased owner, it was held that-the widow was entitled to one-half the distributable surplus of that money as her absolute property, and not merely to such interest therein as she would have been entitled to in the slaves. Foushee v. Blackwell, 1 Rob. 488.
And where a testator dies possessed of slaves, to a third of which the widow, who renounces the will, is entitled, her interest in the slaves is not measured by their estimated hires, but should be an annual sum from the death of her husband until her death, equal to the annual Interest of one-third of the gross amount of the sale of the slaves, or their value. Hickerson v. Helm, 2 Rob. 628. See Foushee v. Blackwell, 1 Rob. 488.
5. Widow's Deed Ineffectual to Relinquish Interest — The real and personal estate of an intestate being undivided between his widow and daughter, and the latter soon to be married, a deed of settlement by the daughter and her intended husband was executed, conveying to the widow and other trustees certain lands by description and slaves by name, describing them as the property of the daughter, the same being, in fact, all the land and slaves of which the intestate died seized. It was held that the widow’s right to her portion of the personal estate was not relinquished by her being a party to the deed of settlement. Wilcox v. Hubard, 4 Munf. 346.
c. ffffect of Widow's Agreement— But, where a widow, administratrix of an estate, appropriates the profits to the purchase of others personal property, and afterwards she and her second husband agree that the property so purchased is part of the intestate’s estate (in lieu of an accounting to the estate), and to take the property purchased as part of her dower, or distributable share for life, such agreement is binding on them, and on purchasers from them, so as to vest the title, after the death of the widow, in the distributees of the first husband, in like manner as if that particular property had belonged to the intestate in his lifetime. Hunter v. Jones, 6 Rand. 541.
d. Interest of Husband in Might of Wife— Intestate died, leaving a widow and children, one daughter being married, and a marriage settlement was made fixing her property on herself and children. After the death of the testator, another daughter died, an infant and without issue. It was held that the husband of the married daughter was entitled, in right of his wife, to a fixed portion of the estate of the deceased daughter, and could make good title to the extent of such portion as against his children claiming under the marriage settlement. Tabb v. Archer, 7 Gratt. 408.
e. Husband Sole Ileir of Wife. —And where a wife died, leaving no children or descendants, under the Code of 1873, her sole heir was her husband. Milhollen v. Rice, 18 W. Va. 510.
5. Aliens.
Alienage of Ancestor No Bar. — In Jacksons v. Sanders, 2 Leigh 109, it was held that, under the statute of descents, if a citizen died seized of lands in Virginia, leaving a brother who was a citizen, a sister who was an alien yet living, children of the alien sister, who were citizens, though their father as well as their grandfathers were aliens, the descendants of the alien sister take by descent one moiety, to be divided among them per stirpes, and the citizen brother the other moiety. And see Hannon v. Hounihan, 85 Va. 429, 12 S. E. Rep. 157, where it is held that, “it is provided, in making title by descent, it shall be no bar to a party that any ancestor, through whom he derives his descent from the inte.state, is or hath been an alien. ’ ’
V/hen Alienage a Bar. — But persons born in a foreign country, of foreigh parents, are not citizens of this state and cannot inherit lands here although their grandmother was a Virginian, who removed to England, where she married and resided till after the revolution, and then returned to Virginia and resided here till her death. Barzizas v. Hopkins, 2 Rand. 276. Compare Jacksons v. Sanders, 2 Leigh 109, and Hannon v. Hounihan, 85 Va. 429, 12 S. E. Rep. 157.
6. Interests of Whole and Half Blood. — C. N.* in 1788, devised a tract of land to C. N. B., and all the residue of his lands to his testator’s son, J. N. To his wife M. N. the use of all the said residue of his lands for the benefit of his children E. N., J. N. and S. N., during her life or widowhood, or until his son J. N. came of age; when his wife was to have the use, only, of the plantation whereon he lived. He then devised her the use, during her life, or widowhood, of all the rest of his estate, to make use of for the benefit of his children E. 1ST., J. N. and S. N. It was held, as J. N. attained to twenty-one years of age, and then dies intestate and without issue, his whole estate was to be divided as follows: To his mother, two-seventh parts; to his sisters of the whole blood, two-seventh parts each; and to the brother of the half blood, one-seventh part; but his other half sister, not born at his death, was *720 entitled to no part thereof. Blunt v. Gee, 5 Call 481.
W., of full age, died intestate, without issue and unmarried, seized and possessed of an estate partly derived, hy devise, from his father, G. W., and partly hy descent from his brother, R. W., leaving an uncle and three cousins, children of a deceased uncle of the whole blood on the mother’s side, and an uncle of the half blood likewise on the mother’s side, and leaving, also, two relations on the father’s side. The estate was ordered to be divided into two moieties; of which one was to be divided between the two relations on the father’s side, and the other moiety was to be allotted those on the mother’s side as follows, to wit, two-fifths to the uncle of the whole blood; two-fifths to the three cousins; and one-fifth to the uncle of the half blood. Browne v. Turberville, 2 Call 390.
7. Interests Per Capita and Per Stirpes. — In Davis v. Rowe, 6 Rand. 355, it was held that where one died intestate, without next of kin other than a niece, the only child of a dead brother, and two nephews and a niece, the child of a dead sister, the real estate of the intestate should descend, and the personal estate be distributed to all these nieces and nephews per capita, and not per stirpes, they being all in the same degree of consanguinity to the testator. Hence, in such case, the estate will not be divided into moieties, one moiety to the child of the brother, and a moiety to the children of the sister, but it will be divided into five equal parts, one to each of the nephews and nieces-
But if, in such case, the two nieces (children of the deceased sister) be dead before the intestate, leaving the two nephews and the niece (the child of the brother), and' one of those deceased nieces leave two children, and the other six children, the estate will still be divided into five parts; of which, one part will be allotted to the, niece (the daughter of the brother), another part to each of the nephews, one other part to the two children of the deceased niece, as representing their mother, and the other fifth part to the six children, as representing their mother; and this on the principle that, if a part of those in the same degree be dead and a part living, the issue of those dead shall take per stirpes, —that is, the share of their deceased parent. Davis v. Rowe, 6 Rand. 355.
In Ball v. Ball, 27 Gratt. 325, it was held, where B. died intestate, leaving as her heirs five children of a deceased son S., six children of a deceased son W„ and a grandchild of W., the only child of a deceased daughter of W., that B.’s real estate should be divided into twelve equal parts, each child of S. and W. and the grandchild of W. taking equal portions.
The court, in Davis v. Rowe, 6 Rand. 355, in commenting on the 16th section of the act of descents of 1785, says, that "though the act does not provide, in terms, for the case of a brother and sister dying before the intestate, and leaving an unequal number of children, and does not, in words, declare what portion of the inheritance shall descend to those children, yet the spirit of that section, taken in connection with the 1st and ith sections, justify the construction that they will take per capita.” Compare Garland v. Harrison, 8 Leigh 368, and Moore v. Conner, 2 Va. Dec. 56. in which last-named case it was held that, where an intestate left surviving no father and no children or descendants, but left a nephew and four nieces and nephews of the half blood, such nieces and nephews took per stirpes, and not per capita.
Under the act of 1705, it was held that the children of those next of kin to the intestate in equal degree, however remote, are not excluded from succession to the portion to which their stock, if living, would have succeeded. Case upon the Statute for Distribution, Wythe 302. See also, monographic note on “Wills” appended to Hughes v. Hughes, 2 Munf. 209.
8. Interest Depending on Seizin of Ancestors.— Before the act of descents went into effect, if a person entitled to a reversion in fee, expectant upon an estate for life, died in the lifetime of the tenant for life, such person never had seizin of the inheritance, and could not transmit it to his heir, but the heir of the person last actually seized was entitled. Dickenson v. Holloway, 6 Munf. 422. See Blankenbeker v. Blankenbeker, 6 Munf. 427.
A testator, who died in the year 1781, devised a tract of land to his wife for life, and at her death to be equally divided among his three sons and their heirs. The eldest son died before the 1st of January, 1787, intestate and without issue; and the widow died after that day.' At her death, the second son was entitled to one-third of the land in his own right, and to the whole of another third as heir to his father, who was the person last actually seized of the freehold and inheritance. Blankenbeker v. Blankenbeker, 6 Munf. 427. See Dickenson v. Holloway, 6 Munf. 422.
111. RIGHTS AND LIABILITIES.
A. OK HEIRS.
1. Right to Rents and Profits. — The heirs are entitled to the rents and profits of the real estate descended, until deprived thereof by decree of court. Hobson v. Yancey, 2 Gratt. 73.
2. Entitled to Possession of Read Estate.— And the heir is entitled to the real estate of his ancestor, though charged with debts, until guilty of mismanagement or misapplication of profits. Trent v. Trent, Gilm. 174.
3. when Possession Presumed. — Where an ancestor dies in possession of land, the presumption of law is, that the heir is in possession after the death of the ancestor. Tapscott v. Cobbs, 11 Gratt. 172.
4. Entitled to interest on Surplus. — Where an ancestor conveys land in trust to secure debt, and it Is sold after the death of grantor, a surplus remaining after payment of the debts secured, the heir is entitled to the interest on the surplus as against creditors of the grantor, up to the time of the decree directing its distribution. Jones v. Lackland, 2 Gratt. 81.
5. When account of Personalty Proper. — In a suit to subject the lands in the hands of heirs, for the debts of the ancestor, where there is no specific lien, an account of personal assets should be first directed. McLoud v. Roberts, 4 Hen. & M. 444.
6. Rights Subordinate to Creditors. — And, where the property is not sufficient to pay the debts of the ancestor, the heir takes only in subordination to the rights of creditors. Martin v. Columbian Paper Co. (Va.), 44 S. E. Rep. 918; Max Meadows L. & I. Co. v. McGavock, 96 Va. 131, 30 S. E. Rep. 460.
When Interest Liable to General Creditors. — So, the interest of an heir to real estate, not conveyed by a judicial sale, because of defective notice of the action, is still liable to the claims of the general creditors of the decedent. Menefee v. Marge, 1 Va. Dec. 644.
7. When Not Liable for Rents And Profits.— upon a bill against an heir to subj ect real estate descended to the debts of the ancestor, the heir is not liable for rents and profits accrued before decree. Blow v. Maynard, 2 Leigh 29.
8. When to Account to Coheirs. — A father entitled to a reversion iu slaves dies, and afterwards the particular estate, which was for life, falls in. It was held that the heir at law must account to the younger children for a portion of the value. Allen v. Allen, Jeff. 86.
*721 9. Surplus Applied Ratably to Ancestor's Debts. — When a grantor in deed of trust to secure debts, which conveys real and personal property, dies intestate, before vsale of the trust subject, the quash equity of redemption descends to the heirs, and the surplus of the real estate, after the trust is satisfied, is applicable ratably to the payment of debts of the grantor by specialty binding the heirs. Harvey v. Steptoe. 17 Gratt. 291.
10. Not Compellable to Make Conveyance.— Where land, incumbered by a deed of trust, descended to three heirs, one of whom, without the concurrence of the others, compromised the debt by conveying the trust subject to the creditor, the court would not compel the others to join in the conveyance though they received a benefit. Tracey v. Shumate, 22 W. Va. 174.
11. Responsible on bond, if Assets Descended.— The heir of an heir is responsible upon an obligation in which the heirs are bound, provided he have assets by descent from the obligor. Waller v. Ellis, 2 Munf. 88.
13. Not’ Bound for Clerk's Fees. — But an heir is not bound for clerk’s fees and taxes due from the ancestor. Haydon v. Goode, 4 Hen. & M. 460.
13. When Hand Primarily Liable. — Where land, incumbered by trust deeds and other liens, is granted by husband to wife, and the wife purchased the land at judicial sale, giving her bonds for deferred payments, and died, on petition of the heirs to have the bonds paid out of her personal estate, to the exoneration of the land which descended to them, it was held that the land, and not the personalty, was primarily liable for the payment of the bonds. Pheasants v. Flood, 89 Va. 96, 15 S. E. Rep. 504.
IV.ACTIONS.
A. BY DISTRIBUTEE.
By Distributee, for Distributable Share. — In general, one distributee cannot maintain a suit to recover his distributable share of the estate without malting the other distributees parties. Sillings v. Bumgardner, 9 Gratt. 273.
Bill to Set Aside Fraudulent Conveyance. — The dis-tributees of a decedent may maintain a bill in equity to set aside, as fraudulent, a deed of gill of personalty made by the deceased; but the subject itself can only be decreed to the personal representative of the decedent or to the distributees, in a case in which the personal representative is a party. Samuel v. Marshall, 3 Leigh 567.
By Husband, for Division of Widow’s Dower. — Where a widow has been assigned dower, and a division of the other two-thirds of the property been had among the heirs, a part of whom refused to bring their advancements into hotchpot, the husband of one of the heirs so refusing, she having died after the widow, leaving children, is a proper party plaintiff in a suit for division of the dower lands. Persinger v. Simmons, 25 Gratt. 238.
By Widow, for Distributive Share. — Where a husband dies, owning slaves, but not in possession of them, and the administrator of the deceased refuses to sue for the recovery of such slaves, the widow may bring a suit in equity for her distributive share in them. Roberts v. King, 10 Gratt. 184.
B. BY CREDITORS.
By Creditors, to Subject Unaliened Lands. — Intestate left lands and personalty; also widow and children, who divided the whole estate amongst themselves, leaving the administrator only certain choses in action with which to pay debts. Account of the administrator showed him in advance to the estate, with nothing to pay judgment against him by decedent’s creditors, who sued in chancery the administrator and his sureties, and the widow, heirs and distributees, to collect out of decedent’s unaliened lands, or otherwise, the bond debt represented by said judgment. It was held that the suit was maintainable against the heirs, etc., to collect the debt out of the unaliened lands upon evidence other than the judgment, and that equity would allow resort at once to said lands. Watts v. Taylor, 80 Va. 627.
Foreign Attachment by Creditors. — And where, in an action by nonresident heirs, the proceeds of the sale of their ancestor’s lands are in tne hands oi a commissioner, creditors of the decedent may enforce payment of their debt out of such proceeds ip the hands of the commissioner by an action of foreign attachment, making the commissioner and heirs parties. Carrington v. Didier, 8 Gratt. 260.
O. BY HEIRS.
By Heir on Bond of Ancestor.— The heir may maintain an action of debt on a bond to his ancestor conditioned for quiet enjoyment of lands, where the breach has happened since the death of the ancestor. Eppes v. Demoville, 2 Call 22.
1. When “Purchaser for, Value” No Defense.— A widow who received her distributable share of the personal property of her husband is not a purchaser for value, so as to be entitled to set up the defense of purchaser for value without notice. Snoddy v. Haskins, 12 Gratt. 363.
V.CONSTRUCTION OF STATUTE OF DESCENTS.
The act of descents of 1785, which was re-enacted at the revisáis of 1792 and 1819, entirely repealed and abrogated the common-law course of descents, and all the principles thereof. Brown v. Tuberville, 2 Call 390; Tomlinson v. Dillard, 3 Call 105; Dilliard v. Tomlinson, 1 Munf. 205; Templeman v. Steptoe, 1 Munf. 366; Davis v. Rowe, 6 Rand. 361; Medley v. Medley, 81 Va. 271; Addison v. Core, 2 Munf. 279; Owen v. Cogbill, 4 Hen. & M. 487. And see Walker v. Boaz, 2 Rob. 485.
VI.APPLICATION OF STATUTES.
A. TO DESCENTS. — In Dilliard v. Tomlinson, 1 Munf. 183, it was held, that the mother of an infant who died intestate between the 1st of October, 1793, when the suspending act of 1792 took effect, and the 22d of January, 1802, when the act “concerning the distribution of unbequeathed personal estate” was passed, or any of her issue by a person other than the father, was not entitled to any part of such infant’s personal estate derived immediately from the father. And see Harrison v. Allen, 3 Call 289.
Where an infant died intestate between the 1st of January, 1787, when the act of 1785 took eifect, and the 1st of October, 1793, the distribution in the interval was regulated by the acts of 1785. Dilliard v. Tomlinson, 1 Munf. 183.
The act of December 8. 1792, repealed the statute of descents of 1785, but this statute was restored by the act of December 28,1792, which also suspended the operation of the iirst-named act till October, 1793; and land acquired by a son after 1793. when he had willed all of his estate to his lather, passed at his death, in May, 1793, to his father, and the land so willed by the son would, at the lather’s decease (who had devised his-estate to his deceased son), in July, 1793, pass to the heirs of the father, under the act ot 1785. Harrison v. Allen, 3 Call 289. See Harrison v. Allen, Wythe 291.
B. TO DEBTS.
Common Law Abrogated by Code In West Virginia.—
At common law, heirs were liable on a covenant of warranty made by their ancestor expressly binding them, but the judgment would have to be satisfied out of the lands descended to them. Otherwise by Code, ch. 86, § 3, which provides that all real *722 estate of a decedent shall he assets for the payment of his debts in the order in which personal estate is directed to he applied. Rex v. Creel, 22 W. Va. 379.
Evidence of Judgment or Decree. — The statute approved Feb. 19, 1884, mating a judgment or decree against the personal representative prima facie evidence against the heir or devisee of the decedent, applies only to judgments or decrees rendered since the passage of the act. Staples v. Staples, 85 Va. 76, 7 S. E. Rep. 199.
Law of Alexandria from June, 1812. — The act of 5 Geo. II, ch. 7, § 4, subjecting lands, slaves, etc., to the payment of debts, was the law of Alexandria county from June 24, 1812. Suckley v. Rotchford, 12 Gratt. 60.
Effect of Special Act of Congress, — where a special act is passed by congress, directing an amount to be paid the administrator of a deceased officer, and that one-fourth of this amount be paid to the widow of such officer, it was held that though, under the laws of Virginia at that time, the widow was not entitled to any part thereof, it being personalty, yet, by virtue of the special act of congress, she should be paid the one-fourth. Walden v. Winston, 9 Leigh 160.